FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 25 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL UVINO,

        Petitioner,

  -against-

UNITED STATES OF AMERICA,

        Respondent.
-----------------------------------------------------------x

10-CV-3429

MEMORANDUM, ORDER
& JUDGMENT

JACK B. WEINSTEIN, Senior United States District Judge

**Appearances:**

Jonathan Edelstein, New York, N.Y, for Petitioner.

Loretta Lynch, United States Attorney for the Eastern District of New York, by Elizabeth Geddes, Assistant United States Attorney.

| | | |
|---|---|---|
| I. | Introduction | 2 |
| II. | Facts | 2 |
| | A. Procedural History | 3 |
| | B. Evidentiary Hearing | 4 |
| III. | Law | 5 |
| IV. | Application of Law and Facts | 6 |
| V. | Certificate of Appealability | 8 |
| VI. | Conclusion | 9 |



I.  **Introduction**

Michael Uvino petitions to vacate his criminal conviction. *See* 28 U.S.C. §2255. He is currently serving a 120-month sentence imposed on July 10, 2009 after being found guilty of racketeering, racketeering conspiracy, assault in aid of racketeering, conspiracy to commit assault in aid of racketeering, and illegal gambling. He argues that his trial counsel was ineffective because of an undisclosed actual conflict of interest. An evidentiary hearing on that issue was held on March 2, 2011.

Supplemental written arguments were submitted, with the parties' agreement that the case would be decided without a further hearing. *See* Docket Entries 18 (March 2, 2011), 19 (April 4, 2011), 22 (May 16, 2011), and 23 (May 17, 2011).

The petition and a certificate of appealability are denied

II.  **Facts**

The following facts are based on the evidence at trial, the hearing of March 2, 2011, and the court's own observations of the proceedings. They are established by clear and convincing evidence.

Michael Uvino, a captain in the Colombo family of La Cosa Nostra, was the leader of a crew that ran a substantial betting enterprise feeding revenue to the upper echelons of the Mafia. He had gambling interests in New York, Connecticut, and Nevada. Those interests included illegal poker and bookmaking operations.

In the course of running this enterprise, one of the gambling establishments controlled by Uvino was robbed. *See* Petitioner's Motion Under Section 2255, Ex. 3 at 2. Following this robbery, Uvino and his associates sought out the men they believed to be responsible. *Id.* at 4-6. After luring to a meeting two young men they suspected had been involved in the robbery, Uvino

and his associates beat them. *Id.* During the course of the thrashing, Uvino hit at least one of the men with a steel chair. *Id.* at 12. The men required medical attention. *Id.*

An oral tape of the lambasting was played at trial. Audible was Uvino striking one man, who screamed and pleaded for mercy. This event served as part of the basis for the charged conspiracy to commit assault in aid of racketeering, and for the assault charge itself.

## A. Procedural History

The defendant was found guilty of seven counts on December 24, 2008. *See* Government Response to Motion to Vacate, at 3. He was acquitted of firearms and extortion charges. *Id.* A motion to set aside the verdict was denied on May 27, 2009. *Id.* at 4.

The Court of Appeals for the Second Circuit denied Uvino's appeal of his conviction. *See United States v. Dey,* Nos. 09-3334-cr, 09-3441-cr, 09-3777-cr, 2010 WL 3749101 (2d Cir. Sept. 28, 2010).

Uvino filed the instant petition on July 27, 2010, arguing that an actual conflict of interest denied him effective assistance of counsel. He asserts that he was unaware until after he was convicted that his attorney had previously represented a codefendant in a criminal case. He argues that this created an actual conflict of interest. Uvino's trial attorney, Michael Washor, had previously represented a codefendant, Philip Costanza, in at least three other criminal cases. Uvino claims that he did not consent to the conflicted representation. He states that he first became aware of the conflict after he was sentenced, while he was discussing his case with Costanza and a jailhouse lawyer.

3

## B. Evidentiary Hearing

An evidentiary hearing was conducted on the issue of the attorney conflict of interest. *See* Hr'g Tr. March 2, 2011. Testimony was heard from three witnesses: Washor, Costanza, and Uvino.

Washor testified to having represented both Costanza and Uvino in criminal cases over the course of two decades. He had developed a personal friendship with each. *Id.* at 4, 12–13. He stated that he never informed Uvino about his prior representations of Costanza because he thought Uvino already knew about them. *Id.* at 35.

During the trial in the underlying case, Washor took the role of lead counsel for all the defendants. He met with the codefendants on seventy-two occasions to prepare for trial while they were incarcerated, often without co-counsel present. *Id.* at 17. During this time he answered the legal questions of each of the defendants. He also conferred with their attorneys. *Id.* at 18–19.

Costanza, speaking by telephone from abroad, testified that he would have been willing to take the stand in the underlying trial. *Id.* at 64. He indicated that he would have stated under oath that neither Uvino nor he was involved in any gambling operation, did not have a gun, and committed no crime. *Id.* at 79–81. Costanza also testified at the hearing that both Washor and his own attorney advised him not to testify during the trial. *Id.* at 66–67.

Uvino admitted to his friendships with Costanza and Washor. *Id.* at 101, 104. He testified that he never inquired how they knew one another and was not aware of Washor's representations of Costanza. *Id.* at 129.

4

### III. Law

A criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002).

"[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). Actual conflicts of interest occur when the "interests of the defendant and his attorney diverge with respect to a material factual or legal issue or to a course of action." *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (quoting *Schwarz*, 283 F.3d at 91). A defendant must show that the attorney's representation was adversely affected by the existence of this conflict, but he need not show prejudice. *Id.*

To succeed on an actual conflict claim, the petitioner must demonstrate that a plausible alternative defense strategy or tactic might have been pursued but was not due to an inherent conflict or the attorney's conflicting loyalties or interests. *Schwarz*, 283 F.3d at 92. This alternative strategy must have sufficient substance that it can be considered a viable alternative. *United States v. Feyrer*, 333 F.3d 110, 116 (2d Cir. 2003).

The alternative need not have changed the outcome of the case and does not even have to be reasonable. *Schwarz*, 283 F.3d at 92. Some alternatives may be so insubstantial or so contrary to defendant's interest that any attorney—conflicted or not—would have avoided them. *See United States v. Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995).

Where a defendant's attorney has an actual conflict of interest, the defendant generally may knowingly and intelligently waive the issue in order to keep the attorney of his choice. *Schwarz*, 283 F.3d at 95. A waiver has to be knowing and intelligent. *Id.*

## IV. Application of Law to Facts

Petitioner's claim can be summed up as follows: I did not know my attorney had represented a codefendant, Costanza, in the past. Had I know, I would have retained other counsel. New counsel would have called Costanza as a witness. He would have testified in substance that there was no assault by me and that I was not a participant or the leader in any gambling. That testimony would likely have established a reasonable doubt about my guilt, leading the jury to find me not guilty of all the charges. Therefore, I was denied my constitutional rights and should have my conviction set aside.

This playbook has no relation to reality. The evidence established the following: Uvino is a captain in a powerful Mafia family with ties to gambling interests in three states. His codefendants were not soldiers admitted into the Colombo family, but mere associates in his crew. They had long been subject to Uvino's discipline and direction. He was thoroughly familiar with their past brushes with the law and who represented them.

Throughout the extensive courtroom proceedings, the court and the jury observed petitioner exercise arrogant dominance over his subservient codefendants, with his counsel taking full charge of the case for all defendants. Petitioner and his counsel controlled the defense. Nothing was done by codefendants that petitioner, acting together with his counsel, did not approve. Costanza's testimony during the evidentiary hearing illustrates this point. He stated:

> [Washor] was the point man. He kept everybody informed. He came in on holidays. He came in on weekends, on Sundays. You know, without him, we would not have known what was going on. . . . I mean he was the only attorney that we actually, you know, saw and discussed or spoke to. Yeah, Michael Washor, [was] in all essence, representing all of us.

Hr'g Tr. at 63.

Petitioner and his codefendant, Costanza, were longtime friends. So too were petitioner's counsel and codefendant. It is not conceivable that petitioner did not know that his counsel had previously repeatedly represented both himself and his codefendant. When petitioner, post-sentence, asked Washor, "[W]hy didn't you tell me?," his counsel replied, appropriately, "I thought you knew." Hr'g Tr. at 35.

Petitioner did know. His claimed lack of knowledge was a falsification deliberately designed as a predicate for this Section 2255 petition. Even if petitioner is not required to prove prejudice, he must show that his interests and those of his attorney diverged with respect to a material fact or legal issue. *Williams*, 372 F.3d at 102. Petitioner and Washor had no divergence in interest; they were two fingers in the same glove.

Even if Uvino did not know until he found out before or during trial, he would not have discharged Washor, a long-term friend and highly skilled attorney. They were too intimate. His counsel was doing an excellent job. For example, the contention that the mobster's guns were merely toy BB guns was part of a tactic to avoid a conviction on a gun count which could have led to an additional cumulative sentence of seven years, or seventeen years in total, for this defendant. This approach worked. The jury acquitted the defendants of gun charges.

For Uvino to establish that his attorney represented conflicting interests, he would need to present a viable alternative that was not pursued because of this conflict. *Feyrer*, 333 F.3d at 116. Had Uvino discharged his counsel and obtained new counsel, that counsel would not have

7

called the codefendant, Costanza, as a witness. If called to testify, the codefendant would have been asked about his own real gun history, increasing the probability of conviction of the petitioner on a disastrous gun count. An alternative is not plausible when it is so clearly against the defendant's interest that a conflict-free attorney would not pursue it. *Malpiedi*, 62 F.3d at 469. The gun charge made impossible any alternative to the way petitioner's counsel conducted the defense.

Apart from the gun count, Costanza's unavoidable testimony about his own gambling background would have doomed the petitioner, his close companion, to a conviction for gambling.

Were codefendant called by petitioner's counsel, Costanza's own counsel would have advised silence and the pleading of the Constitutional protection against self-incrimination. Washor and Costanza's counsel did speak about the possibility of Costanza taking the stand. They both rejected the notion due to his past gun trouble and their belief that he would not hold up under cross-examination. Hr'g Tr. at 24, 29. His failure to testify was ultimately a tactical decision made by all the attorneys to have none of the defendants testify. *Id.* at 18-19. Failure of any new counsel to strongly advise Costanza to remain silent would have been the basis for a Section 2255 application for inadequacy by Costanza.

By clear and convincing evidence it is established that a) no constitutional error occurred in the course of petitioner's conviction; and b) there is no reasonable basis for an appeal.

## V.    Certificate of Appealability

Section 2253(c)(1) of Title 28 of the United State Code provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding. . . ." 28 U.S.C. § 2253(c)(1). In

order to obtain a certificate of appealability, Uvino must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). No showing of a denial of constitutional right has been made. A certificate of appealability is denied.

## VI. Conclusion

The petition to vacate the conviction pursuant to 28 U.S.C. § 2255 is dismissed.

A certificate of appealability is denied since petitioner's claims lack all merit.

Petitioner's counsel shall advise him on his right to appeal and to seek a certificate of appealability from the Court of Appeals for the Second Circuit.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 24, 2011
Brooklyn, New York

9